is not an armed career criminal. The ACCA has both a three occasion and a three offense element. Here we've conceded that Mr. Curtis satisfies the three offense element with his three 2003 breaking and entering convictions. But we dispute that he satisfies the three and remand him for resentencing for two reasons. First is pre-Wooden, under Tucker and Spann, the transcript of plea is inconclusive as to whether Mr. Curtis was actually involved in each of the three breaking and enterings at issue. And second, if you disagree with me on background, under Wooden, the analysis set forth in Wooden, we believe it abrogates this court's holdings in Letterlow and Lenny and those other cases. And applying the factors as the court did in Wooden, Mr. Curtis' crimes occurred on a single or at most two occasions. Do you agree that if it doesn't abrogate, I understand your argument that it does, but if it doesn't abrogate that under our Letterlow and prior cases that you lose? I mean, that's sort of the crux of the second. I understand the first argument too, but on the second argument, the crux really is Wooden had to change our prior precedent because our prior precedents, I'm not trying to make you say something you don't want to say here, but it's not very good for you. I understand that the prior precedent is not very good at all, but I think there are kind of two responses to your question, Judge Richardson. First, my big picture argument is that it changed the factors themselves, and I'll get into that in just a second. But in addition to changing the factors themselves, even if you conclude it doesn't change those factors, I think it changes the way you should weigh those factors. But assuming that you disagree with both of those arguments, yes, I think we lose. Great. Thank you. I'll jump right into the Wooden point. I think that it does abrogate this court's prior precedent because the factors that the Wooden court identifies are, they're different in kind and also they are, there are certain factors that are identified in Letterlow and Linney that the Wooden court didn't analyze that were certainly present in Wooden. Wooden identifies three primary factors, time, place, and the character of the offense. Applying those factors here, we've got a single afternoon where Mr. Curtis and his two co-conspirators are driving around in a rural part of North Carolina, breaking into three separate homes. I submit to the court that this part of the state is something where people who live a mile and a half or two miles apart might consider themselves to be neighbors. It's not really like he's in Richmond or Manhattan or somewhere where going a mile and a half or two miles completely changes the character. He is, over the course of an afternoon, committing the same offense. Petty theft, breaking and entering, stealing personal property and cash from three separate homes, and he is doing so. What do you, you talk about the distance, I mean, I understand this is subjectively somebody might think that two to seven miles is neighbors, but the court in Wooden tells us that it can be a single factor. It can be sufficient if the crimes were committed at a significant distance from one another. That factor alone, right, a single factor, a significant distance, if it's more than a mile and a half or two miles to seven miles, how far does it have to be for that? When you look at those cases, those cases are not hundreds of miles, right? They're the two miles sort of time frame or distance that we're talking about here. That's what the Supreme Court's telling us to look at, right? I agree that they're not hundreds of miles. The write-out case that the Supreme Court cites, it's 14 miles. We are certainly within 14 miles. But in Wooden, they were all in the same location. It was a storage facility. And here we have different houses miles apart. I agree with that, and I think that there are levels of abstraction. I don't think that Wooden itself should be read just to cover its facts where, you know, it's storage facilities that are adjoining. But instead, thinking about the way that the court analyzed the facts of Wooden, yes, a single factor may be dispositive, but I would submit to the court that that is for the government to demonstrate to the district court in the first instance that these are at a significant distance, considering all of the facts, because Wooden talks about a fact-specific inquiry. So this is for the government to submit, the nature and the character of the offense, and for the district court to make those findings. Without that, what we know is a distance kind of year. We know that they did this in the course of an afternoon. You know, this could have happened, we don't know because the government didn't submit this evidence, but this could have happened over the course of, you know, 30 minutes to an hour. Isn't in the, I'm sorry. No, please go, Judge Johnson. The last factor, the character and relationship of the offenses, we have different victims, different types of items being taken. And so doesn't that lend a lean in the government's favor there, that factor? I don't think it does, and this is an excellent segue for me to talk about the way that Wooden abrogated this court's prior precedent. The victim factor is certainly present in Wooden, so is the ability to reconsider. You know, there was nothing compelling Mr. Wooden to go from the first storage unit to the second storage unit, the third, and so on. And so those are two things that this court has paid very close attention to in its prior cases. But why are the victims necessarily different? Wouldn't you have to know who's responsible for loss at the storage facility to know who the actual victim is? I mean, if you have, as I would imagine, I don't know this, right? I'm speculating, but we're all speculating at this point. If I store things at a storage facility, they take on some responsibility that they're not stolen. And so if they're stolen, they are actually in part the victim, the ultimate victim, because they're going to be responsible to me for the value of the items that were taken. It's not obvious to me that they're totally separate victims. I guess it's just a factual matter. Well, I think it's a factual matter in Wooden. I do think that the victim element is, the victim factor under Wooden is a little bit unclear. But just thinking about going back to law school, thinking about the bundle of sticks, I mean, if you store something in a storage unit, yes, they may take over some responsibility, but if I bring it to the storage facility... But you can have two victims, right? Like, you don't have to have a single victim. Right. You don't have to have a single victim. And so if I break into your storage unit, maybe the storage unit owner suffers some sort of loss, but you do as well if I take your computer or whatnot. Totally. But that might be why Wooden doesn't spend much time talking about victimhood, right? Because it's like, it's not obvious in that case whether they're similar or the same or overlapping victims. Yes, Your Honor. It's not obvious in Wooden whether they're the same or different victims. But just thinking about also the factor that the defendant had the ability to reconsider, certainly Mr. Wooden did. And I think the best evidence that Wooden abrogated this court's prior precedent is this court's holding in the United States against Carr. That's a 2010 decision at 592-536-36. Carr is factually analogous to Wooden in a lot of ways. Mr. Carr broke into a storage facility and then hit 10 separate storage units. This court used the opportunity to reconsider factor as the dispositive factor there. That case is irreconcilable with Wooden. If Justice Kagan in Wooden suggests that, that's an easy case when you're thinking about the common definition of the term occasion. It could be a barroom fight. It could be a wedding. And I think about Mr. Curtis's string of offenses kind of like the wedding hypothetical. So instead of close proximity, I think back to my own wedding. You go somewhere and you get a ceremony and then you probably go to a third place and you have a reception. And those are all kind of logically connected around the same theme and they can happen maybe at several miles apart, but they're all connected in the same way. And so here, just looking at the facts of the case, Mr. Curtis and his co-conspirators, without prejudice to my Tucker argument that they weren't in the same place, they're going to one house, they're going to another house, they're going to a third house. They're all within relatively close proximity. We know they're doing it over the course of just a single afternoon. And then we know that they're committing essentially the same crime. Judge Giles, I take your point that yes, they're stealing different things, but I think that that is too granular of an analysis. Is it just taking money? Is it just taking property? Here, they're taking things that are of a relatively low value, sort of opportunistic theft, driving around, finding houses where no one is home. And so, I think applying the wooden factors in that way and looking at those offenses that are connected with one another, that this court should conclude that this was a single occasion. What if this were bank robberies, armed bank robberies? Would your argument still be the same that it was one single occasion if he went to one bank, they went to one bank, did an armed robbery, drove 1.9 miles, did another bank robbery, then drove 7.3 miles? Would you still argue that three armed bank robberies were a single occasion just because they transpired in a single afternoon? I think that there are differences in kind in those crimes. It's not the sort of opportunistic crime with low value items you have here. Just given the nature of the crime, I think a bank robbery requires a little more planning than opportunistic breaking and entering. I don't think that would be my argument. I certainly think that would be an argument I could make, but I don't know if it would be the one I would be resting on. Here, I think it really does have to do with the nature of the crime. Can I ask you a question about the nature of the crime? You mentioned earlier that the government failed to provide evidence of a certain aspect of the crime that we were discussing. Do you agree that, at least under our circuit precedent, that we're bound to only look at Shepard documents? I do agree you're bound to only look at Shepard documents. Which is why I'm curious. The argument you're making is they didn't provide evidence of this aspect, but the very nature of the Shepard documents is that they can't show a comparison between the crimes. Whether they occurred on the same occasion, it seems like it's extraordinarily difficult to analyze based on the Shepard documents, which is the fact of conviction, not so much the circumstances of the conviction. We've got this whole body of law that tells us that we don't get to look at what actually happened. We've got to look at the elements of the offense, but the elements of the offense don't tell us the relationship to another offense. That's the very nature of the Shepard documents. Does that make any sense to you? The issue with the Shepard documents, what you're saying makes sense, but as far as it relates to what's in the Shepard documents and the specificity of those documents, I think it's difficult for the government. I think with nonspecific Shepard documents, because this is supposed to be a fact-intensive inquiry and the government bears the burden, I think that the nonspecific Shepard documents under lenity principles at a bare minimum suggest that the ACCA should perhaps be more rarely enforced unless there are truly three separate crimes. Just to be clear here, your client waived the argument that the occasions clause must be decided by a jury below. We waived the argument. I think that that was foreclosed under United States v. Brown. At this level, that's true. We waived it below, and yes, I think right now it's foreclosed by United States v. Brown anyway. Very briefly, unless the court has any further wooden questions, I do want to touch on the Tucker issue. I direct the court to JA 222 through 24. What we know under Tucker and Spann is the one who actually participated in the crime. If the crimes occurred simultaneously or if Mr. Curtis had an unbroken string of conduct, if that's the case, the ACCA should not apply to him. In this case, all we know from the transcript of sentencing, we've got an unusually specific transcript here. Normally in North Carolina, you are just checking boxes and handwriting in forms. This is an actual transcript of plea. The government simply recites that Mr. Curtis, Mr. Downey, and Mr. Green all broke into these homes. I don't think that's specific enough under North Carolina law where a principal and an accomplice can be charged as a principal. This isn't an indictment. This is the factual basis. If I say that Joe broke into the home or Joe and Bob broke into the home, we don't understand that to mean that Joe broke into the home and Bob was an accomplice before the fact. We understand that to mean that they broke into the home. If it's an indictment, I understand that you might argue that Section 2 or some version of aid-in-the-bed liability is implicit, but this is just a factual description. We just take these words as they're naturally understood. Nobody would read Joe and Bob broke into a home. Anything other than Joe and Bob broke into the home. I take your point, Judge Richardson, but again, that statement is ambiguous under North Carolina law. It's technically true as a legal matter, even if it's not true as a factual matter. It can provide the factual basis for the plea. The defendant in that context has no incentive to push back or to correct it, but because it is ambiguous, because it is legally ambiguous as to whether the defendant was actually in the home or not. It also says, it reads like Curtis, comma, along with these other two individuals who broke into the home. I think it reads even stronger because it makes it appear that he was physically there and breaking in. Curtis along with these two people. Judge Gregory, I'm out of time. Please respond. Certainly, you may. Judge Giles, I understand your point. I take the point that it says Curtis and these two defendants. They were charged separately, and so we don't know what their Shepard approved documents would say if it says Green or Downey and two other men broke into the homes. Accepting that, I think we need to go back to the government bears the burden of proof. The government can't just submit an ambiguous document, a document that under North Carolina law is legally ambiguous and then have the district court accept it as fact. The government needs something more specific to demonstrate that Mr. Curtis was actually in the home. For those reasons, we'd ask the court to vacate the judgment. Thank you, Mr. Edwards. Mr. Bragdon? Thank you, Your Honor. May it please the court, I'm David Bragdon, and I represent the United States. Let me turn to the wedding analogy for just an instant. Imagine the guests sit in pews, the bride walks down the aisle, the priest performs the ceremony. An hour later, the guests are at a large community center and the bride is dancing with her father. Is this one occasion or two? It depends. Was it the same bride? Different brides, different weddings, different occasions. Just like a bride matters, whether it was the same bride matters in determining whether or not it was the same occasion, whether or not it was the same occasion. Especially when we're talking about breaking and entering into separate homes. This court has a lot of case law in the Fourth Amendment context that emphasizes the importance and the privacy interest inherent in a home. And when a defendant travels from one distance to another, to another, and breaks into three separate occasions, they're in separate locations, they involve separate victims, the layout of the house, the placement of the furniture, the likelihood of people being at home, all of those things are different. This wouldn't, did not abrogate the Fourth Amendment. First of all, Wooden was written in, Wooden made a couple of points. First of all, its first point is, it's got to be a multi-factor approach. Several circuits, and it listed them in its opinion, were applying an approach where as soon as one crime ended, the next crime began, and the court said, that's too simple. We have to consider this multi-factor approach. Well, the Fourth Circuit has been applying a multi-factor approach for almost 30 years. Do you agree that if we had the facts of Carr, that Carr was abrogated by Wooden? I do agree with that, Your Honor. And your colleague suggests, I mean his argument I think in part is, if that's true, then we ought to at least consider whether that means the test we were applying was wrong, as opposed to just our application of that test was wrong. So I would agree with the consider part. Obviously, if the Supreme Court comes out with a different outcome from the Fourth Circuit, using what seems to be a similar test, you want to examine it. But obviously, we know from a variety of case law that courts can sometimes apply similar tests in inconsistent ways. And I think what we learned from Carr is that that is not the right way to apply that test, but it doesn't mean the test is wrong. And I think my colleague alluded to the fact that the one factor the Supreme Court doesn't mention in its test specifically is victim, and the court had some good reasons for why that would be the case. But I will also mention that the Supreme Court specifically referenced the First Circuit and Second Circuit cases as applying the multi-factor approach that it wanted to bring across the country. And those cases, both the First and Second Circuit cases it references, both use victim as one of the factors. And the First Circuit approach even relies on letter law in coming up with its multi-factor approach. And so we would contend there's nothing wrong with the approach. I think that in Carr, this court probably didn't give enough weight to the fact that it was, as the Supreme Court put it, one after another after another. It was uninterrupted conduct. And I think in Wooden, that's what we see loud and clear. They want to see some sort of time difference or time lag. We have that here. Mr. Bregman, the word occasion in terms of the grounds for this enhancement, occasions were put in, factors in Wooden were put in. Wasn't the real purpose of that is that courts were giving too much time with these enhancements? Courts were using the enhancement and giving these incredible on-career sentences too frequently without any consideration of the factors that Wooden put in. Wasn't that the purpose? Because basically we're saying, okay, you did three different things, three different crimes. Do you agree with that? If you disagree, tell me. I don't agree. I do think, and just because I think the court states it more broadly than I would, certainly the court, as Wooden acknowledges, there was a case in which the government took a position that this bar room incident involving multiple assaults, that each one counted. I think there's plenty of evidence that Congress thought that that was too much. The government also thought it was too much. It withdrew. But when you look at the legislative history, and I'll read from the same report that the Supreme Court quoted in Wooden, first of all, the legislation is called the Technical Criminal Law Amendments Act. On its face, that doesn't sound like they're trying to make radical changes. Senator Kennedy, when he's explaining this, says it makes corrections. Then he said, in addition to typographical and punctuation changes, it clarifies the scope of numerous statutory conditions. Then when they get to this provision, Senator Byrd introduces the point by point of what the law does. That's what the Supreme Court quoted. It says, thus, a single multi-count conviction could still qualify where the counts were related to crimes committed on different occasions. But a robbery of multiple victims simultaneously, as in Petty, would count only as one occasion, only as one conviction. Very clearly, we see here, they're concerned with simultaneous or almost simultaneous convictions. Then it goes on to say, this interpretation plainly expresses the concept of what is meant by a career criminal. That is a person who, over the course of time, commits three or more of the enumerated kinds of felonies and is convicted therefore. Right, over a course of time. That was the whole point. Do you know of anybody, a quarterback, who threw 900 yards in one game and 12 touchdowns in one game? You would say, wow, what a career he had. Would that be a career? No matter how spectacular that day was, would that be a career of incredible football player, quarterback? Come on, stay with me right now. We're talking about common sense now. If we're talking two separate players. No, we're talking about this thing I just gave you. I'm dealing with my hypothetical, and it's far-fetched, but I want to know. I agree. That would be one career. Why not? Why not? Why would it not be a career? Well, career talks about... No, no, I agree. Career doesn't talk about anything. Career means what? Career means what he did over his lifetime. Right. For anybody. That was just football. He could do anything. He could be a judge. A judge writes a great opinion, but that was the last one she wrote. So that was it. But the point is this. It's a career of criminal enhancement. Career. And the whole idea is the space is in a sense that, does this person demonstrate over time that they're incorrigible? That they're not susceptible to mercy or any kind of remorse over time? But everybody can have a bad day. I'm not condoning, but it's a bad day. Who would like to be judged by what you did on your worst day? Nobody. Nobody in this room would want to be judged by what they did on their worst day. This is about a career enhancement. Okay, that day you had this. We've been pondering. Did he have... How far is it? Sidebar. I had a lot of cousins in the country. I was from a smaller town, but I would say, well, how far is the store? Isn't that far? It's right down the way. It's near my neighbor. I'm going five miles, and I haven't gotten to the store yet, but that's in the country. That's a neighbor. Sort of rural southern tradition growing up. But the point is, why is the person dealing with all of these months that's caused this incredible mass incarceration? Because you could take one day and say, that day is your career. And so if the burden is on you, so now the rule of lenity was just, well, you know, you could have been that day. But we just... We know it's a matter of just a few hours. But in those hours then, you get dealing with your career. Isn't something wrong with that in terms of what we're trying to do in this country? You see it now with the Sentencing Commission. They're looking at it any way we've been sentencing people, and every time they get a chance, they say, no, we didn't mean that. We didn't mean that. Compassionate release. And all of these things to try to turn the clock back on an incredible two million people incarcerated in our country. So I'm saying now, the burden is on you, and we're talking about one day. How is that a career? Your Honor, let me see if I can address... Oh yeah, I gave you a whole lot, because I want you to give a context, because so often we sentence people without... You know, text without context is pretext. That's why I want to give you a context. And I appreciate that, Your Honor. I would say a couple things. First of all, Congress could have said that the crimes had to be committed on separate days, and they didn't. And even the committee report I just read anticipated that it could be crimes charged in the same indictments. I think what is meaningful and what makes sense here is it's got to be separate enough that the defendant can think about it before committing the next crime. Here, invading someone's home, breaking in to the privacy and the sanctity of their home, stealing their things, that's a very big deal. And when you drive, you open your car door, you shut your car door, you drive to the next place, there is a separation of time and distance. It's not uninterrupted, as Wooden said. It's not continuous. It's not one after another after another. There is a separation. And in that case, the defendant has made a decision. Your Honor's argument is that... Separation is what? Different victims, right? And 15 minutes to get to the next place. Is that the separation? Yes, but I would say... And trying to get the same stuff, stuff in people's houses. The argument about one bad day could be made to one bad week, or one bad month. It might be, it might be, but certainly you put it on steroids, the test that is here, one afternoon. Well, Congress chose the word occasion. And occasion means episode, it means occurrence. You know, and when you think about an episode, each breaking into a home is a separate episode. Maybe it's a series of episodes. Maybe they're all connected in a sense. I'm not saying they're not. But each one stands alone. When the Supreme Court in Wooden cites to our friends on the Second Circuit's ride-out decision, that was a single day where there were multiple robberies of different homes, right? I mean, that's what the Supreme Court is giving us as an example of what would be separate occasions. That's right. And I believe it was 13 to 15 miles in that case. It was two breaking and enterings. And we cited several cases. One of the things I think that's interesting that the Supreme Court said is they said, when we've examined courts that have applied this multi-factor approach, they've generally reached the same opinion about the same effects. And so we looked at other circuits that were applying that multi-factor approach, and they each found that different burglaries were committed on different occasions. And we cited those in our brief, including the Third, Eighth, Ninth, and of course, the Second Circuit's decision in ride-out. And some of those were, I believe, the United States versus Gray, which the Eighth Circuit, they did not give distance, but they described the locations as being, quote, very close to one another. But here, Lenny and Hobbs are still good law. And I think the defendant acknowledges that if they're still good law, those cases apply here. Nothing about Wooden abrogated or changed the result in those cases. And so, you know, basically, your argument, as I understand it, is basically, Wooden is basically meaningless, really, the way you do it. Because, for example, wouldn't you say that this case would be the same if the houses were next to each other? And if there were three houses that were next to each other, and you could just walk across lawns, you could do it the same way. You could apply Wooden factors and come up with the same thing. Well, three different occasions, because those were occasions. They're different victims, different homes. And while they were walking across the lawn, they could have thought about it and done something different and turned the other way. So Wooden really means nothing. I would say, Your Honor, that balancing the factors is an appropriate role for the district court judge. Not much of a role. You would say that, my hypothetical, that it applies. The enhancement applies. Wouldn't you? Your Honor, I would have to look at the... Yes, I think if it's separate homes, we would probably argue that they wouldn't apply. The district court would look at those factors. They'd balance them under... Balance what? ...and make a decision. It's balance what? It looks like the court has to be bereft of any kind of common sense of what a career is. I mean, if you do that, then everything is... Unless they're in the same room in a bar. I want to answer the... And does it make any difference to you if you were in a bar, if both of you, and I pummeled you in your face, and I went to another person, am I less of a career criminal because you're in the bar? And you say, Well, no, that was okay. You beat one of them. Because they're in the same bar, you're not. Does that really make much sense in terms of looking at culpability and impact on a victim? If you lie in there with a concussion, okay, but that doesn't count because you also gave a concussion to somebody in the same bar. You do agree, right? Your analysis of wooden would fall if they're in the same bar, and you did that for felonious assault or something, right? And the Supreme Court gave that as an example. Is that it? Right, exactly. It really makes no sense, does it, in terms of victim impact. I think it makes sense. And I would say because what the Supreme Court was focused on was this uninterrupted, continuous one after another. Your bar example has that. You're in a fight you know, you punch a guy, a guy attempts to grab you, you punch him. Who said it was a fight? I just said he punched you in the face and gave you a concussion. I'm going to the next person over there eating peanuts at the bar. I'm going to do that. And then another person right there is with his friend or her friend, I'm going to go punch her. There's no connection with a fight. I think Congress... But it would still apply, right? I'm just extending a chance to stop the conduct and change his mind. And if you're in one, you know, if you're going to a different location, that interrupts the action, changes the situation. And I would agree, if you're walking next door, it's a closer call. No doubt about it. I'm not sure how that case comes out. But here, they're not walking next door. It might matter whether you're in the city or the country, right? If walking next door is a 1.9 mile walk, it might feel different than if it's, you know, you're here in Richmond and walking next door is five feet. That's right. That doesn't help you here because this is accurate. But Mr. Edwards is saying that's the difference. I think that that's a factor. And I think the district court weighs those factors. And that's what we're asking is for the district court to be able to weigh the relevant factors the same way that this court has said it would do it. You know, and with the same things that the Supreme Court has also said that are important. You know, is there time to make a different decision? Is there a separation in location? What is the nature of the crimes? And then finally, you know, the Fourth Circuit has given the victim as a factor. Unless there's further questions from the court, I would ask the court to affirm in this case. Can I just confirm one thing? Sure, sure, sure. Thank you. There is an appellate waiver in the plea agreement, and you have not asserted it on appeal. I assume that you agree that any appellate waiver of this sentencing issue is waived. Yes. And I would also, that reminded me of one last thing. The court did mention, you asked a question earlier, Judge Richardson, about the jury issue. The defendant, it is the government's position that this should be a jury question. Obviously, this court has not agreed. In this particular case, that's not an issue because the defendant in the plea agreement waived his right to have this issue heard before a jury. And the point there is, regardless of whether the law requires a jury to decide or not, a defendant can choose to waive that right. Absolutely. Thank you, Counselor. Thank you, Mr. Bragdon. Mr. Edwards, you have some time reserved. Mr. Edwards, I mean, Mr. Bragdon, Mr. Edwards, thank you. Thank you, Judge Gregory. I want to start with your discussion with opposing counsel about the purpose of the ACCA. I think the Supreme Court has told us what it is, and it's supposed to be reserved for the worst of the worst. It's supposed to be context-specific, and the court says that it's supposed to be somebody who makes a career, as you said, who makes their living committing crimes. That's not Mr. Curtis. He has three breaking and entering convictions over the course of an afternoon. And the only other time this court has been faced with that, with those facts, United States against Ellis, the court came out, the court vacated the sentence and remanded for resentencing because they occurred over the course of the afternoon. I think that's exactly right here, and that leads me back to my prior discussion with Judge Richardson about the Shepard documents and the contents of those documents. The government bears the burden. If the Shepard documents aren't sufficient, the fact of the matter is, the government just can't carry its burden if the government needs to use those Shepard documents to provide the context that's necessary. Now, do I think that that may suggest that it should be a jury issue? Yes, because there's a lot of presentation that could go on about the nature of the crime, but here... If it's a jury issue, do you agree that the Shepard documents are no longer a limitation? The Shepard documents are a limitation on the court, but if the jury were to be deciding this, and I understand this is way outside of your case because you've waived the issue and we've precluded it, but would you agree in that context the Shepard documents wouldn't apply and we would actually get to determine the facts that underlie what actually happened? Yes, Your Honor. The Shepard documents are just supposed to be a limitation on the court. Once you've introduced the jury, it removes that Sixth Amendment issue. Finally, I want to talk about the discussion that different victims appears to be the determinative factor here from the government's analysis. The Supreme Court talks about balancing factors and it pushes back on this idea of some sort of categorical rule that different victims or one factor... But I thought they agreed that in the bar... Wooden tells us this, but in the bar, different assault victims, Judge Gregory's hypothetical, I walk down the barstool and I hit everybody that I see. Those are all different victims, but we know those are not because they're in the same location, they're extremely close in time, they're the same in course of conduct, right? However we want to describe that, right? Right. It's not categorical in that case because you're looking at the other factors. My point is you said the government said that was a categorical rule. I'm just saying the government just said it's not a categorical rule. Fair enough. But in any event, I do think the government is asking this court to look at one or two factors to the exclusion of the others. I think the court needs to look at all of the factors and on balance, if those factors do not... On balance, based on the evidence in this case, you can't make a conclusion about many of the factors and the government bears fault for that. The government failed to carry its burden in that case. The appropriate thing to do in that instance would be to vacate the sentence and remand for resentencing without the act of enhancement. Unless there are further questions, we'd ask the court to vacate the judgment and remand for resentencing. Thank you, Mr. Edwards. I note that you're a court opponent and on behalf of the Fourth Circuit, I want to thank you, especially you and many other lawyers who come and help us on these cases. We really appreciate that. Thank you, Judge. And also, Mr. Bragg, we note your able representation in the United States. We'll come down to the council and proceed to our next case.
judges: Roger L. Gregory, Julius N. Richardson, Patricia Tolliver Giles